UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
CARLOS BARRIENTOS,                  :    14 Civ. 3207 (LTS) (JCF)
                                    :
            Petitioner,             :         REPORT AND
                                    :         RECOMMENDATION
     - against -                    :
                                    :
SUPERINTENDENT WILLIAM LEE,         :
                                    :
            Respondent.             :
- - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LAURA TAYLOR SWAIN, U.S.D.J.:

      Carlos Barrientos, proceeding pro se, has submitted a petition

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

challenging his conviction for criminal possession of a controlled

substance in the first degree following a jury trial in New York

State Supreme Court, New York County.   In his petition, Mr.

Barrientos asserts that (1) the police search prior to his arrest

was unlawful and thus violated his Fourth Amendment rights; (2) the

trial court's improper admission of evidence of his prior bad acts,

combined with prosecutorial misconduct during summation, deprived

him of due process and a fair trial; (3) the trial court abused its

discretion by permitting the prosecutor to cross-examine him on his

prior drug convictions; and (4) he was deprived of effective

assistance when his trial counsel failed to introduce an

exculpatory statement by a former co-defendant.   The petitioner now

moves for a stay in order to exhaust additional claims of

prosecutorial misconduct, ineffective assistance of counsel, and

actual innocence -- claims not included in the instant petition.

For the reasons set forth below, I recommend that the motion for a stay be denied and the petition be dismissed.

Background

A. The Arrest

On the evening of March 17, 2005, Police Officers Quillian Virgil and James Sepulveda approached a vehicle parked in a no-parking zone in northern Manhattan. (Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Memo.") at 2; Appellant's Brief, New York Supreme Court, Appellate Division, First Department ("Pet. App. Brief") at SR 93).[1] The officers asked the petitioner, who was seated in the driver's seat, and Donna Adams, who was seated in the passenger seat, for their driver's licenses. (Opp. Memo. at 2). After determining that neither of the occupants had a valid license, Officer Virgil continued to illuminate the inside of the vehicle with his flashlight and observed a glass tube in the ashtray that he identified as "the stem of a used crack pipe." (Opp. Memo. at 2; Pet. App. Brief at SR 96-97). The officers perceived Ms. Adams to be agitated; she leaned forward to put something on top of a plastic bag at her feet, at which point the officers directed both

---

[1] "SR" refers to the state secord of the proceedings in the petitioner's criminal case.

passengers to step out of the vehicle. (Pet. App. Brief at 96-98).
After they did so, Officer Virgil observed that the plastic bag
contained two smaller bags of cocaine.  (Opp. Memo. at 2-3; Pet.
App. Brief at SR 98).   The petitioner and Ms. Adams were both
arrested and taken to the police precinct.  (Pet. App. Brief at SR
100).   During a subsequent search of Mr. Barrientos, the police
found a small amount of cocaine in his jacket.[2]  (Pet. App. Brief
at SR 100).

     At trial, Officer Virgil testified that while the petitioner
and Ms. Adams were being held in adjacent cells, he overheard Mr.
Barrientos ask Ms. Adams to "take the hit for it."  (Pet. App.
Brief at SR 102; Opp. Memo. at 3; T. at 80).[3]  He also testified
that Mr. Barrientos then asked if he would be released if Ms. Adams
"took the blame." (Pet. App. Brief at SR 102; T. at 90).   The next
morning, Ms. Adams made a statement in which she  acknowledged that
the plastic bag found in the vehicle contained cocaine and stated
that Mr. Barrientos was present when she purchased the drugs.

---

     [2] Drug paraphernalia and a rock of crack cocaine were also
recovered from Ms. Adams when she was frisked after exiting the
vehicle.  (Pet. App. Brief at SR 99).

     [3] "H." refers to the transcript of pre-trial hearings on the
petitioner's motion to suppress evidence and on the admissibility
of evidence of the petitioner's prior bad acts (attached as Exhs.
1-5 and part of Exh. 6 to Opp. Memo.).  See n.5, infra.  "T."
refers to the trial transcript (attached as part of Exh. 6 and
Exhs. 7-9 to Opp. Memo.), and "S." refers to the sentencing
transcript (attached as part of Exh. 9 to Opp. Memo.).

(Opp. Memo. at 3).

B. <u>Procedural History</u>

On March 24, 2005, a New York County grand jury indicted both Mr. Barrientos and Ms. Adams on one count of criminal possession of a controlled substance in the first degree in violation of New York Penal Law § 220.21(1) and one count of criminal possession of a controlled substance in the third degree in violation of Penal Law § 220.16(1). (Opp. Memo. at 3; Indictment No. 1397/2005, attached as Exh. A to Affidavit of Carlos Barrientos dated Aug. 2, 2011 ("Second 440.10 Memo."), at SR 250).

1. <u>Suppression Hearing</u>

On March 2 and 3, 2006, the Honorable Richard Carruthers held a hearing on the defendants' motions to suppress (1) the cocaine found in the vehicle and on the petitioner, (2) various apparently fraudulent identification cards possessed by the defendants, (3) a hammer found in the trunk of the car, and (4) the defendants' post-arrest statements. (Opp. Memo. at 3). The only witness at the hearing was Officer Virgil,[4] who testified to the events surrounding the defendants' arrest. (H. at 19-164, 215).

The court denied the suppression motions in all respects. (H. at 215; Pet. App. Brief at SR 116). Justice Carruthers found that

---

[4] By the time of the hearing, Officer Virgil had been promoted to the position of sergeant. (H. at 19-20, 217).

4

the officers "had the right to approach" the vehicle and ask for identification because of the car's location in an otherwise vacant no-parking zone; that the petitioner's expired license, the "crack stem" in plain sight, and Ms. Adams' growing agitation gave the officers the right to ask the passengers to exit the vehicle; and that the subsequent discovery of the bags of cocaine "in plain view" gave the officers probable cause to make the ensuing arrests. (H. at 222-24; Opp. Memo. at 9).   Lastly, Justice Carruthers determined that both Mr. Barrientos and Ms. Adams made a knowing, voluntary, and intelligent waiver of their rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), and that their statements to the prosecutor while in custody were voluntarily given.  (H. at 225-26; Opp. Memo. at 9).  At a Sandoval hearing[5] on March 8, 2009, the court held that if Mr. Barrientos testified at trial, the prosecutor could question him regarding the underlying facts of his 1994 felony conviction for criminal possession of a controlled substance, the fact of his 1998 misdemeanor conviction for criminal possession of a controlled substance, and the fact that he was on parole at the time of his arrest for the instant offense.  (H. at 359-61; Pet. App. Brief at SR 140).  In his oral decision, Justice

---

[5] A Sandoval hearing is a pre-trial proceeding held to determine the extent to which the prosecutor can cross-examine a defendant about his prior bad acts in order to impeach his credibility.  See People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974).

Carruthers found that, given Mr. Barrientos' "lengthy record of involvement [in] crimes concerning narcotics," it would be appropriate for the jury to hear about a small portion of his criminal history in order to gauge the credibility of his testimony. (H. at 360-61).

### 2. Ms. Adams' Plea

Mr. Barrientos' and Ms. Adams' trials were severed on March 8, 2006. (H. at 343; Pet. App. Brief at SR 93). Subsequently, Ms. Adams pled guilty to second-degree drug possession in full satisfaction of the indictment, and received a sentence of five years' imprisonment. (Opp. Memo. at 10 n.3). She did not appeal her conviction or sentence. (Pet. App. Brief at SR 94).

### 3. Mr. Barrientos' Trial

Justice Carruthers presided over Mr. Barrientos' jury trial, which began on March 9, 2006. The prosecution's case involved testimony from Officers Virgil and Sepulveda as well as from several other witnesses, including experts who testified about the chemical analysis of the narcotics. At the conclusion of the prosecution's case, the petitioner made a motion to dismiss both counts of the indictment, which Justice Carruthers denied. (T. at 387-88). Mr. Barrientos did not testify or introduce any evidence. (T. at 345, 358-59).

On March 14, 2006, the jury found the petitioner guilty of one

count of criminal possession of a controlled substance in the first degree. (T. at 489-90). The court found Mr. Barrientos to be a second felony offender (S. at 3-5), and sentenced him on April 4, 2006, to a determinant term of eighteen years' imprisonment followed by five years of post-release supervision (S. at 17).

### 4. Direct Appeal

Mr. Barrientos, through counsel, filed a direct appeal on August 6, 2010, in the Appellate Division, First Department. (Pet. App. Brief at SR 92-148; Opp. Memo. at 17). He asserted the first three claims he raises in the instant habeas petition, as well as a fourth claim arguing that his sentence was excessive. (Pet. App. Brief at SR 108). The Appellate Division unanimously affirmed his conviction on May 17, 2011. (Decision and Order dated May 17, 2011 ("5/17/11 Decision") at SR 210-12). It held that the trial court properly denied the suppression motion, finding that the police were entitled to determine whether an occupant of an illegally-parked car could legally move the car, and that the subsequent "plain-view observation of contraband" led to a lawful arrest. (5/17/11 Decision at SR 210-11). The court further found that the pre-trial Sandoval ruling constituted a proper exercise of discretion given Mr. Barrientos' criminal record; similarly, it upheld the challenged evidentiary rulings with one exception, which, in any event, it found to be harmless error. (5/17/11

Decision at SR 211-12).  Mr. Barrientos sought leave to appeal to the Court of Appeals, raising the first three claims he argued at the Appellate Division.  (Letter of Richard E. Mischel dated July 14, 2011, at SR 213-18).  The  Court of Appeals denied leave on August 2, 2011.  (Order Denying Leave at SR 222).

### 5. Postconviction Proceedings

#### a. 440.10 Motions

Mr. Barrientos filed a pro se motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on August 28, 2008, prior to perfecting his direct appeal. (Notice of Motion to Vacate Judgment Pursuant to CPL § 440.10(g)(h) dated Aug. 28, 2008 at SR 1-2).  There, he argued that: (1) his trial counsel provided ineffective assistance by failing to fully investigate and present evidence regarding an exculpatory statement made by Ms. Adams;[6] (2) the prosecutor's failure to disclose Ms. Adams' statement during trial constituted a Brady violation; and (3) the  prosecutor failed to disclose any cooperation agreement with Ms. Adams, thereby violating the petitioner's due process

---

[6] As evidence of this exculpatory statement, Mr. Barrientos cited notes, apparently from a post-Miranda interrogation of Ms. Adams on March 18, 2005, that memorialize her statement, "They are my drugs.  They are not his.  I got them -- let's leave it at that. We made a stop and I went to go get them."  (Miranda Warning Sheet for Donna Adams dated March 18, 2005 ("Adams Statement"), attached as Exh. A to Affidavit of Carlos Barrientos dated  Aug. 28, 2008 ("First 440.10 Memo."), at SR 27).

rights pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972).
(First 440.10 Memo. at SR 6-21).

Justice Carruthers denied the motion on December 10, 2008.
(Decision and Order dated Dec. 10, 2008 ("12/10/08 Decision") at SR
73-75). Regarding the ineffective assistance of counsel claim, the
court concluded that

> [t]he co-defendant stated that she would assert her 5th
> Amendment privilege, and was thus an unavailable
> witness.[7] However, her statement was not admissible as
> a declaration against penal interest, since there were
> insufficient indicia of reliability. In fact, other
> evidence existed that the defendant instructed the co-

---

[7] A review of the record indicates that Ms. Adams did not in
fact intend to assert her Fifth Amendment right at the petitioner's
trial. At a pre-trial hearing, she answered "yes" when Justice
Carruthers asked: "is it in fact your decision to testify for the
defense on Mr. Barrientos' defense, is that so?". (H. at 339-40).
On March 16, 2006, four days into the petitioner's trial and mid-
way through the prosecution's case-in-chief, Mr. Barrientos'
counsel stated in a colloquy with the court that the defense had
decided not to call Ms. Adams as a witness. (T. at 358-59).
Justice Carruthers clarified: "[J]ust to make it clear, Ms. Adams
is here, she is in custody, she is here, she is available but
nonetheless you don't wish to call her?" (T. at 359). Ms. Adams'
counsel, who was present, agreed to advise his client that her
testimony was no longer required at Mr. Barrientos' trial. (T. at
359).

The prosecutor, who was also present during this colloquy (T.
at 358-60), appears to have misrepresented these facts in his brief
opposing the petitioner's first 440.10 motion. (People's Response
to Defendant's 440.10 Motion at SR 46). Justice Carruthers
seemingly relied on that misrepresentation in erroneously
concluding that Ms. Adams was unavailable to testify, a finding
that supported his rejection of the petitioner's ineffective
assistance claim. (12/10/08 Decision at SR 74). However, this
error is harmless in the context of Mr. Barrientos' habeas
petition, as I do not reach the merits of that claim.

> defendant to claim culpability. Under these circumstances, the inability of the defendant's trial attorney to introduce the co-defendant's statement in evidence did not constitute ineffective assistance of counsel.

(12/10/08 Decision at SR 74) (internal citations omitted). Justice Carruthers also found the petitioner's claims of <u>Brady</u> and <u>Rosario</u> violations meritless as, according to the prosecution's Voluntary Disclosure Form, notes of Ms. Adams' statement were turned over to the petitioner after his indictment. (12/10/08 Decision at SR 74-75). Finally, he rejected Mr. Barrientos' claim regarding the non-disclosure of a cooperation agreement between the prosecutor and Ms. Adams as having no factual basis. (12/10/08 Decision at SR 75). The Appellate Division denied leave to appeal on February 2, 2009. (Certificate Denying Leave dated Feb. 2, 2009 at SR 85).

The petitioner filed a second <u>pro se</u> motion to vacate his conviction on August 2, 2011, the same day that the Court of Appeals denied leave to appeal the Appellate Division's affirmation of his conviction on direct appeal. (Notice of Motion to Vacate the Judgment, Actual Innocence Claim, dated Aug. 2, 2011 at SR 228, 234). He raised a jurisdictional claim based on a defective indictment and a related actual innocence claim. (Second 440.10 Memo. at SR 228-47). Justice Carruthers again denied the motion because Mr. Barrientos could have, but did not, include these arguments in his direct appeal, as required by CPL § 440.10.

10

(Decision and Order dated Dec. 14, 2011 at SR 268-69).   The Appellate Division denied leave to appeal the Supreme Court's decision on December 27, 2012.  (Certificate Denying Leave dated Dec. 20, 2012 at SR 278).

On March 14, 2014, Mr. Barrientos, through counsel, filed a third motion to vacate his conviction.  (Notice of Motion to Vacate Conviction Pursuant to CPL § 440.10(a)(b) and (h) dated March 14, 2014 at SR 279-80).   The petitioner voluntarily withdrew the motion, however, on June 27, 2014, before it had been decided and after he filed his habeas petition in federal court.  (Order dated June 27, 2014 at SR 299).

The petitioner, acting pro se, then filed a fourth motion to vacate his conviction on November 3, 2014, while his habeas petition was pending in this Court.  (Notice of Motion to Vacate Judgment Pursuant to CPL § 440.10(a)(b) and (h) dated Nov. 3, 2014 at SR 300-01).  He argued that (1) the trial court lacked personal and subject matter jurisdiction; (2) the judgment was procured by duress, misrepresentation, or fraud due to the prosecutor's failure to present exculpatory evidence to the grand jury; (3) trial counsel was ineffective for failing to raise the deficiencies in the grand jury process, to introduce exculpatory evidence at trial, and to question the propriety of the police illuminating the vehicle with a flashlight; and (4) he is actually innocent.

11

(Memorandum of Law in Support of Motion to Vacate Judgement ("Fourth 440.10 Memo.") at SR 327-44). The actual innocence claim revolves around Ms. Adams' "detailed admission that she solely possessed the drugs" (Fourth 440.10 Memo. at SR 343); notably, Mr. Barrientos presented an ineffective assistance of counsel claim in his first motion to vacate based on the same underlying facts -- i.e., Ms. Adams' exculpatory statement. (First 440.10 Memo. at SR 6-13). This motion appears to still be pending in state court. (Affidavit of Carlos Barrientos dated Dec. 11, 2014 ("Stay Motion"), ¶¶ 2-5).

### b. Habeas Petition and Motion for Stay

Mr. Barrientos executed the instant petition on April 22, 2014 (Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus dated April 22, 2014), and filed an amended petition on August 29, 2014. (Amended Petition under 28 U.S.C. § 2254 dated Aug. 29, 2014 ("Pet.")). He now requests that the Court stay his petition pending the completion of state court proceedings on the unexhausted claims in his current motion to vacate. (Notice of Motion dated Dec. 11, 2014). In his stay request, the petitioner describes the unexhausted claims as concerning "actual innocence, prosecutorial misconduct, and ineffective assistance of trial counsel." (Stay Motion, ¶ 3). He seeks to exhaust these claims in state court, and if unsuccessful in that forum, to include them in

his habeas petition. (Stay Motion, ¶ 5). Mr. Barrientos notes that he was forced to file his habeas petition prior to exhausting state remedies on the additional claims in order to avoid being barred by the statute of limitations under the Antiterrorism and Effective Death Penalty Act ("the AEDPA")). (Stay Motion, ¶ 4).

In his petition, Mr. Barrientos argues that (1) the pre-arrest search and seizure violated his Fourth Amendment rights; (2) he was deprived of a fair trial and due process by the trial court's admission of evidence of his prior bad acts; (3) the trial court abused its discretion in permitting cross-examination of him regarding his prior drug convictions; and (4) he received ineffective assistance due to his trial counsel's failure to introduce an exculpatory statement by Ms. Adams. (Pet., ¶ 13).

Discussion

A. AEDPA Statute of Limitations

The respondent argues that Mr. Barrientos' habeas corpus petition was not timely filed and is thus barred under the AEDPA's one-year statute of limitations. (Opp. Memo. at 2, 26-32). The one-year clock begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State

13

action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation." 28 U.S.C. § 2244(d)(2). A collateral state court action is considered "'pending' from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures." Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), aff'd, 531 U.S. 4 (2000). In New York, "the statute of limitations is tolled from the date [a § 440.10] motion is filed to the date it is decided by the trial court, as well as during the pendency of an application for leave to appeal from the trial court's denial of that motion." Collins v. Artus, 496 F. Supp. 2d 305, 312 (S.D.N.Y. 2007).

The Court of Appeals denied Mr. Barrientos' application for leave to appeal the Appellate Division's affirmation of his

conviction on August 2, 2011.  (Order Denying Leave at SR 222).

His conviction thus became final on October 31, 2011 -- ninety days

after the Court of Appeals' denial of further review, when his time

to seek a writ of certiorari from the United States Supreme Court

expired.  (Pet., ¶ 10); see Williams v. Artuz, 237 F.3d 147, 151

(2d Cir. 2001) (holding that limitations period for state

prisoner's habeas petition "begins to run only after . . . the

expiration of time for seeking certiorari" by the Supreme Court);

accord Chrysler v. Guiney, 14 F. Supp. 3d 418, 433 (S.D.N.Y. 2014)

(noting that judgment becomes final ninety days after decision by

New York Court of Appeals).  This would ordinarily have triggered

the commencement of the one-year time limit for filing a federal

habeas petition.  28 U.S.C. § 2244(d)(1).

However, because the petitioner had filed a motion to vacate

his conviction in state court on August 2, 2011 (Second 440.10

Memo. at SR 225-27), the AEDPA's one-year clock was statutorily

tolled while that motion remained pending.  See 28 U.S.C. §

2244(d)(2); Bennett, 199 F.3d at 120-21.  The Appellate Division

denied review of the trial court's denial of that motion by order

entered on December 27, 2012. (Certificate Denying Leave dated Dec.

20, 2012 at SR 278).  As a result, the one-year limitations period

began to run on December 27, 2012, and ended on December 27, 2013.

During that time, Mr. Barrientos did not have any collateral

15

motions pending in state court, and thus there was no statutory tolling that would further extend the period for a timely habeas petition. Although the petitioner subsequently filed two state post-conviction motions, both are dated after December 27, 2013, and thus could not have tolled the one-year statute of limitations. See Conception v. Brown, 794 F. Supp. 2d 416, 420 (W.D.N.Y. 2011) (noting that "state-court post-conviction motion cannot restart a statute of limitations period that has already run"). Accordingly, his habeas petition, dated April 22, 2014, was untimely.

Mr. Barrientos argues that his petition was timely because the one-year clock under the AEDPA did not start until ninety days after December 27, 2012, when the Appellate Division denied leave to appeal the denial of his second motion to vacate. (Pet., ¶ 14). But the addition of ninety days for seeking certiorari applies only to a direct appeal, not to a post-conviction motion. Smuldone v. Senkowski, 273 F.3d 133, 137-38 (2d Cir. 2001); accord Saunders v. Senkowski, 587 F.3d 543, 548-49 (2d Cir. 2009). Here, statutory tolling under 28 U.S.C. § 2244(d)(2) is effective only "from the date a petitioner files his or her 440.10 motion until the date the Appellate Division denies the petitioner leave to appeal that decision." Wilkins v. Kirkpatrick, No. 06 Civ. 2151, 2009 WL 3644082, at *7 (S.D.N.Y. Nov. 4, 2009); accord Chrysler, 14 F. Supp. 3d at 442. Once such leave is denied by the Appellate

16

Division, a state defendant may not seek review of that decision from the New York Court of Appeals. <u>Wilkins</u>, 2009 WL 3644082, at *7; <u>see</u> <u>also</u> <u>Nichols v. Brown</u>, No. 09 Civ. 6825, 2013 WL 1703577, at *1 n.2 (S.D.N.Y. April 19, 2013). As a result, Mr. Barrientos had no further recourse in state court following the Appellate Division's decision on December 27, 2012, and there was no statutory tolling beyond that date.

B. <u>Equitable Tolling</u>

Although 28 U.S.C. § 2244(d) only provides for tolling of the statute of limitations for habeas petitions by the "pendency of a state post-conviction motion, in rare and exceptional circumstances a petitioner may invoke the courts' power to equitably toll the limitations period." <u>Doe v. Menefee</u>, 391 F.3d 147, 159 (2d Cir. 2004) (internal quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Holland v. Florida</u>, 560 U.S. 631, 645 (2010) (confirming that AEDPA's one-year statute of limitations is not jurisdictional and thus "subject to equitable tolling in appropriate cases"). To be entitled to such tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." <u>Holland</u>, 560 U.S. at 649 (internal quotation marks omitted).

17

To establish the first element required for equitable tolling, the petitioner has the burden of showing he acted with "reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F. 3d 13, 17 (2d Cir. 2000); see also Baldayaque v. United States, 338 F.3d 145, 153 (2d Cir. 2003) (ordering district court on remand to consider whether petitioner acted as "diligently as reasonably could have been expected under the circumstances" (emphasis omitted)).

As to the second element, there is a "high bar to deem circumstances sufficiently 'extraordinary'" to warrant equitable relief. Dillon v. Conway, 642 F.3d 358, 363 (2d Cir. 2011). The inquiry focuses on the severity of the obstacle that prevented the petitioner from filing within the one-year period. Id. Sufficiently "severe" obstacles have included extraordinary attorney misconduct, see Baldayaque, 338 F.3d at 152-53; the petitioner's mental illness, Bolarinwa v. Williams, 593 F.3d 226, 231 (2d Cir. 2010), or hospitalization, Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011); prolonged delay by a state court in sending notice of a ruling, Diaz v. Kelly, 515 F.3d 149, 154-55 (2d Cir. 2008); and intentional obstruction by prison officials of an inmate's ability to file his petition, Valverde v. Stinson, 224 F.3d 129, 133-34 (2d Cir. 2000). The petitioner must also demonstrate the existence of a "causal relationship between the

18

extraordinary circumstances . . . and the lateness of his filing." Id. at 134.

Here, Mr. Barrientos has not alleged that he is entitled to equitable tolling, nor has he offered any explanation for his failure to timely file his motion other than his misconception regarding statutory tolling.  (Pet., ¶ 14; Petitioner's Affidavit in Reply to Opposition to Motion for Stay ("Stay Reply"), ¶ 4).  To be sure, such confusion is not unwarranted, given the maze of federal and state procedural rules that govern the running of the AEDPA's statute of limitations; however, it is not grounds for equitable tolling.  See, e.g., Mears v. Graham, No. 13 Civ. 8737, 2014 WL 4060022, at *3 (S.D.N.Y. Aug. 14, 2014); Wallace v. Superintendent of Clinton Correctional Facility, No. 13 Civ. 3989, 2014 WL 2854631, at *7 (S.D.N.Y. June 20, 2014).  Moreover, on July 8, 2014, the Honorable Loretta A. Preska, U.S.D.J., ordered Mr. Barrientos to amend his petition because the grounds for habeas relief were not clearly identified.  (Order dated July 8, 2014 ("Order to Amend") at 3-4).  In so doing, Judge Preska notified Mr. Barrientos that his petition was untimely and specifically directed him to "allege any facts that show that he has been pursuing his rights diligently and that some extraordinary circumstance prevented him from timely submitting his petition."  (Order to

Amend at 7).  The petitioner has not provided any explanation in response to this directive.

Although Mr. Barrientos is <u>pro</u> <u>se</u> and thus is accorded a degree of latitude, <u>see</u> <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) ("the submissions of a <u>pro</u> <u>se</u> litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest" (internal quotation marks omitted)), his <u>pro</u> <u>se</u> status does not excuse him from fulfilling the requirements for equitable tolling, <u>see</u> <u>Doe</u>, 391 F.3d at 175 (noting that "<u>pro</u> <u>se</u> status  does not in itself  constitute an extraordinary circumstance meriting tolling"); <u>Victorial v. Burge</u>, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007) (observing that although <u>pro</u> <u>se</u> litigants are "held to more lenient standards, [they] are not excused from establishing" elements of equitable tolling). Furthermore, nothing in the record demonstrates that Mr. Barrientos was either a victim of a "rare and exceptional circumstance" or that he acted with reasonable diligence during the relevant period. <u>See</u> <u>Smith</u>, 208 F.3d at 17.  As a result, he does not meet the criteria for equitable tolling.

C. <u>Equitable "Exception"</u>

Mr. Barrientos' only other avenue for overcoming the untimeliness of his petition is an "equitable exception" to AEDPA's statute of limitations, based on his alleged "actual innocence"

20

claim.  McQuiggin v. Perkins, __ U.S. __, __, 133 S. Ct. 1924, 1931-36 (2013); see also Rivas v. Fischer, 687 F.3d 514, 547 n.42 (2d Cir. 2012) (distinguishing plea to override AEDPA's limitations period based on actual innocence from request for equitable tolling).  In McQuiggin, the Court held that a showing of "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." __ U.S. at __, 133 S. Ct. at 1928.  The Court cautioned that credible gateway claims are "rare" and must meet the demanding standard laid out in Schlup v. Delo, 513 U.S. 298 (1995), by presenting new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner]."  McQuiggin, __ U.S. at __, 133 S. Ct. at 1928, 1933 (quoting Schlup, 513 U.S. at 329) (alteration in original).  A district court may also consider "[u]nexplained delay in presenting new evidence," as untimeliness "does bear on the credibility of evidence proffered to show actual innocence."  Id. at __, 133 S. Ct. at 1935-36.

Additionally, a petitioner who passes through the actual innocence gateway must advance an accompanying meritorious constitutional claim.  Rivas, 687 F. 3d at 540.  "It is the combination of the two claims -- that the petitioner is likely innocent and that his conviction was likely the result of

nonharmless constitutional error -- that permits a habeas court to review [an untimely] petition . . . in order to avoid a miscarriage of justice." Id. at 540-41.

A viable claim of actual innocence must be both credible and compelling. Id. at 518; accord Smith v. Chappius, No. 13 Civ. 7595, 2014 WL 5786945, at *2 (S.D.N.Y. Nov. 6, 2014). To satisfy the "credible" prong, a claim "must be supported by 'new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.'" Rivas, 687 F.3d at 541 (quoting Schlup, 513 U.S. at 324). The "compelling" element requires that the petitioner demonstrate "that 'more likely that not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt.'" Id. (quoting House v. Bell, 547 U.S. 518, 538 (2006)); accord Williams v. Racette, No. 13 Civ. 7779, 2014 WL 5285472, at *4 (S.D.N.Y. Oct. 15, 2014).

While it is clear that a claim must be supported by "new []  evidence" to be credible, Schlup, 513 U.S. at 324, "circuit courts are split on whether 'new' includes only 'newly discovered' evidence -- evidence that was not available at the time of trial -- or more broadly encompasses 'newly presented' evidence -- all evidence that was not presented to the jury during trial." Lopez v. Miller, 915 F. Supp. 2d 373, 400 n.16 (E.D.N.Y. 2013) (emphasis

in original).   The Second Circuit in <u>Rivas</u> appeared to adhere to the "newly presented" interpretation of the <u>Schlup</u> standard, but did not "discuss the issue in detail." <u>Id.</u>; <u>see also</u> <u>Tuitt v. Martuscello</u>, No. 12 Civ. 1003, 2013 WL 5508385, at *15 n.16 (S.D.N.Y. Oct. 2, 2013) (noting that <u>Rivas</u> did not specifically address question but cited with approval <u>Garcia v. Portuondo</u>, 334 F. Supp. 2d 446, 454 (S.D.N.Y. 2004), which found "evidence that the original fact finder did not then consider" to be "new").   In support of his actual innocence claim, the petitioner in <u>Rivas</u> presented new evidence in the form of an affidavit by a forensic pathology expert.   <u>Rivas</u>, 687 F.3d at 528.   He had first presented this evidence in a 440.10 motion, which was denied on all grounds by the state court.   <u>Id.</u> at 528-30.   Although the Second Circuit found that the factual predicate underlying the affidavit was known to or discoverable by the petitioner at the time of trial, it nevertheless held that the affidavit was "new evidence" and that the actual innocence claim was therefore credible.   <u>Id.</u> at 536, 543.

Mr. Barrientos raises his actual innocence claim in this Court through his motion for a stay.   (Stay Motion, ¶¶ 3, 5).   In the interest of justice and efficiency, I deem the substance of that claim -- as described in his pending 440.10 motion -- as properly before this Court for the purpose of determining whether it renders

the petitioner eligible for an equitable exception to the AEDPA's one-year bar.   Mr. Barrientos argues that Ms. Adams' "detailed admission that she solely possessed the drugs" is compelling evidence that he is actually innocent of the crime of possession. (Fourth 440.10 Memo. at SR 343).   He further argues that her statement "taking full responsibility for the drugs . . . was never presented to the grand jury or petit jury."   (Affidavit in Support of Motion to Vacate Judgment dated Nov. 3, 2014 ("Fourth 440.10 Aff.") at SR 323).

The record makes clear that evidence of Ms. Adams' exculpatory statements were available to the petitioner and his counsel prior to trial.   (Rosario List, attached as Exh. C to First 440.10 Memo, at SR 32).   Additionally, Officer Virgil testified at the pre-trial hearing about Ms. Adams' statement that "she went and picked up the drugs." (H. at 155; Fourth 440.10 Aff. at SR 311).   Nevertheless, because there was no evidence presented at trial regarding Ms. Adams' exculpatory statement, this evidence would qualify as "new" under Rivas.[8]

---

[8] Even though the timing of the submission of this evidence does not disqualify it from being deemed "new" under Rivas, the fact that Mr. Barrientos knew of Ms. Adams' statement during his trial and elected not to call her as a witness, see supra note 7; (T. at 358-59), calls into question its significance.   See McQuiggin, __ U.S. at __, 133 S. Ct at 1935 (reiterating that lower courts "may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability" of evidence of actual innocence (quoting

Whether the petitioner's newly presented evidence is "reliable" is a different question. See Schlup, 513 U.S. at 324 (listing categories of new reliable evidence to include "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"). "Evidence supporting an actual innocence claim need not fit within one of the categories explicitly listed in Schlup so long as the court determines it to be 'new reliable evidence.'" Lopez, 915 F. Supp. 2d at 399 n.14 (emphasis omitted) (citing Munchinski v. Wilson, 694 F.3d 308, 338 (3d Cir. 2012); Wolfe v. Johnson, 565 F.3d 140, 164 n.32 (4th Cir. 2009); Souter v. Jones, 395 F.3d 577, 593 n.8 (6th Cir. 2005)). Nonetheless, certain evidence is "simply not the type of evidence that meet[s] the Schlup requirement[s]" of credibility and reliability. Diaz v. Bellnier, 974 F. Supp. 2d 136, 144 (E.D.N.Y. 2013). Evidence that courts have considered to be "new and reliable" includes: signed, notarized, and sworn statements of alibi witnesses, Lopez, 915 F. Supp. 2d at 401; written recantation of the prosecution's only witness, id. at 405-09; unchallenged testimony of expert forensic pathologist, Rivas, 687 F.3d at 543-44; and DNA testing, House, 547 U.S. at 540.

---

Schlup, 513 U.S. at 332) (alteration in original)).

Here, Mr. Barrientos offers a purportedly exculpatory statement by his former co-defendant made during an interrogation. However, this evidence lacks several indicia of reliability: the statement was only informally memorialized in handwritten notes (Adams Statement at SR 27), and is uncorroborated by other evidence. As to the latter point, the petitioner has not made any showing that Ms. Adams, who pled guilty and did not appeal her conviction (Opp. Memo. at 10 n.3; Pet. App. Brief at SR 94), is unavailable to provide a formal, sworn statement attesting to exclusive ownership of the drugs. Furthermore, the statement itself is somewhat ambiguous: although Ms. Adams is recorded as saying "[t]hey are my drugs. They are not his," she went on to explain that "[w]e made a stop and I went to go get them," indicating that the petitioner was present at the time she acquired the cocaine. (Adams Statement at SR 27). The trial court, in adjudicating Mr. Barrientos' first 440.10 motion, also found that Ms. Adams' statement lacked reliability due to Officer Virgil's testimony that "the defendant instructed the co-defendant to claim culpability." (12/10/08 Decision at SR 74). Consequently, Mr. Barrientos' claim of actual innocence does not satisfy the credibility prong of the Schlup standard; on this basis alone, he is not entitled to an equitable exception AEDPA's statute of limitations. See Diaz, 974 F. Supp. 2d at 144.

Even assuming _arguendo_ that Ms. Adams' statement is new reliable evidence, it is not sufficiently "compelling" to open the _McQuiggin_ gateway. Compelling evidence of innocence is that which is "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." _McQuiggin_, __ U.S. at __, 133 S. Ct. at 1936 (quoting _Schlup_, 513 U.S. at 316). Here, Mr. Barrientos has not made a showing that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." _Id._ at 1928 (internal quotation marks omitted); _cf._ _Donato v. United States_, No. 09 CV 5617, 2012 WL 4328368, at *3 (E.D.N.Y. Sept. 20, 2012) (exculpatory letter written by cooperating witness that undermined credibility of another prosecution witness found insufficiently compelling); _Melendez v. Lempke_, No. 09 CV 4373, 2012 WL 3887093, at *16 (E.D.N.Y. Sept. 7, 2012) (unsworn, unofficially translated statement implicating different person in crime did not meet _Schlup_ standard).

In this case, Ms. Adams' statement is not compelling evidence of Mr. Barrientos' innocence for a number of reasons. First, the petitioner does not contest his presence in the vehicle in which the cocaine was found. Under New York law,

> [t]he presence of a controlled substance in an automobile
> . . . is presumptive evidence of knowing possession

thereof by each and every person in the automobile at the time such controlled substance was found; except that such presumption does not apply . . . when the controlled substance is concealed upon the person of one of the occupants.

Penal Law § 220.25(1); see also Dixon v. Miller, 293 F.3d 74, 87 (2d Cir. 2002); Parsons v. Burge, 373 F. Supp. 2d 200, 206 n.1 (W.D.N.Y. 2005); (T. at 463). Therefore, a presumption of "knowing possession" of the drugs attached to Mr. Barrientos, which he does not attempt to rebut other than through Ms. Adams' statement.

Second, had he called Ms. Adams as a witness, Mr. Barrientos would have opened the door to questions regarding the nature of their relationship, which could have undermined her credibility with the jury.[9]  Officer Virgil's testimony that he heard Mr. Barrientos ask Ms. Adams to "take the hit" (T. at 80) would also have been likely to discredit her testimony.  Accordingly, the evidence presented here is not sufficiently compelling to make a different outcome probable.  See Rivas, 687 F.3d at 542 (observing that the relevant inquiry is the "likely behavior of the trier of fact").  Mr. Barrientos is thus not eligible for an equitable

---

[9] At sentencing, the prosecution alleged (without providing any supporting evidence) that Ms. Adams and Mr. Barrientos had known each other for twenty years, during which time the petitioner had acted as Ms. Adams' pimp. (S. at 11-12).  Although the court did not consider these allegations  in determining the petitioner's sentence (S. at 17), it is plausible that had Ms. Adams testified, the prosecution would have endeavored to introduce such information to further damage her credibility.

exception to AEDPA's limitations period. Because he has not raised a "tenable actual-innocence gateway plea[]," <u>McQuiggin</u>, __ U.S. at __, 133 S. Ct at 1928, I do not reach the merits of the constitutional claims alleged in his habeas petition. And, because his petition should be dismissed as time-barred, his application for a stay is moot. <u>See</u> <u>Conception</u>, 794 F. Supp. 2d at 423.

Conclusion

For the reasons above, I recommend that Mr. Barrientos' motion for a stay (Docket no. 11) be denied and his petition for a writ of habeas corpus be dismissed as untimely. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura Taylor Swain, Room 1320, and to the undersigned, Room 1960, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          April 27, 2015

Copies transmitted this date:

Carlos Barrientos
06-A-2426
Greenhaven Correctional Facility
P.O. Box 4000
Stormville, NY 12582-0010

Lisa E. Fleischmann, Esq.
Assistant Attorney General
120 Broadway
New York, NY 10271